David Carroll STEPHENSON, David Struckman, and Laura Struckman, Pro Se, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 03–616 T.

United States Court of Federal Claims.

Oct. 15, 2003.

David Carroll Stephenson, David Struckman, and Laura Struckman, Tacoma, Washington, pro se plaintiffs.

Robert N. Dorosin, Washington, D.C., with whom was Assistant Attorney General Eileen J. O'Conner, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

## I. INTRODUCTION

Plaintiffs have come before this court *pro se* to request the enumerated relief from alleged constitutional due process and equal protection violations, as well as various civil rights claims. While we find that this court lacks the requisite power and authority to adjudicate plaintiffs' claims herein, on the other hand, we do not rule that plaintiffs are without a cause of action in a different tribunal, to wit, the U.S. district court. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore GRANTED.

## II. JURISDICTION

### A. Tucker Act

It is well settled that the United States, as sovereign, cannot be sued absent its consent. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Said consent must occur through an unequivocal, express waiver of sovereign immunity. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct.

1501, 23 L.Ed.2d 52 (1969) (citing *Sherwood,* 312 U.S. at 584, 61 S.Ct. 767). The Tucker Act, codified at 28 U.S.C. § 1491, furnishes both the requisite express waiver and confers narrowly prescribed jurisdiction on this court. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Tucker Act is strictly jurisdictional in nature, however; it does not *ipso facto* create any substantive rights enforceable against the United States. *See, e.g., Mitchell,* 463 U.S. at 216, 103 S.Ct. 2961; *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In pertinent part, the Tucker Act provides as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491(a)(1).

An abundance of caselaw interpreting this court's jurisdiction makes clear the following: absent a contract, this court's jurisdiction under the Tucker Act may only be invoked when a facial and fair reading of the substantive provision upon which a claim is grounded plainly mandates compensation by the federal government for any damage sustained by the claimant. *See, e.g., Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961 (quoting *Testan,* 424 U.S. at 400, 96 S.Ct. 948). Furthermore, "the claim must be one for money damages against the *United States." Id.* at 216, 103 S.Ct. 2961 (citing *King,* 395 U.S. at 2–3, 89 S.Ct. 1501) (emphasis added).

### B. Plaintiffs' Allegations and Requested Relief

#### 1. Allegations [1]

Regarding plaintiff David Carroll Stephenson, on or about March 21, 2000, IRS agents obtained and executed a federal search warrant to seize books and records, computers and equipment, and other property from the

1. *See* Plaintiffs' March 25, 2003 First Amended Complaint.

office of Mr. Stephenson. Said property, according to plaintiff, was maintained by him under (private) contractual obligations. All property seized from Mr. Stephenson has been returned with the exception of books and records. Through his own efforts and the Freedom of Information Act ("FOIA"), Mr. Stephenson learned that he was the subject of a grand jury criminal tax investigation for purported "excisable activity on the Virgin Islands."

As to plaintiff David Struckman, on or about February 3, 2001, federal agents seized books and records, $10,000 in gold coin, $15,000 in cash, and other property from the home of Mr. Struckman under federal warrant. Said property, according to plaintiff, was maintained by him under (private) contractual obligations. Mr. Struckman also learned through FOIA that he was the subject of a grand jury criminal tax investigation for purported "excisable activity on the Virgin Islands."

With respect to plaintiff Laura Struckman, on or about January 14, 2003, plaintiff was notified by letter (purportedly from Department of Justice attorneys) that she was the subject of a grand jury investigation for criminal tax matters and monetary transactions violations. Subsequently, on or about February 21, 2003, Ms. Struckman was arrested by federal agents, acting under a federal arrest warrant, and transported to the United States District Court for the Western District of Washington at Seattle. There, Ms. Struckman was presented with a grand jury indictment. She next underwent an arraignment hearing where a plea of not guilty was entered, and Ms. Struckman was subsequently released on the same date.

Thereafter, plaintiffs filed their March 19, 2003 Complaint and March 25, 2003 First Amended Complaint, *pro se*, containing the following four (4) causes of action:

First Cause of Action:

The Defendant United States in the Person of the Defendant actors, collectively, conspired and acted in concert to knowingly and willfully commit and continue to commit overt acts against the Plaintiffs individually and collectively, in violation of the limits and prohibitions imposed by Article 1 section 8 clause 17 and 4 U.S.C. § 72, and Article 4 clause 3 prohibiting the erection of a state within a state, limiting the legislative authority of the United States to only those specific areas owned and subject to the jurisdiction of the United States.

The acts and omissions of the Defendants actors result in the direct and proximate unlawful restraint under color of federal law and office, of the Plaintiffs' guaranteed and protected rights including but not limited to

1. to freely associate anomalously [sic] with other parties without interference form [sic] the Defendants, protected by article 1 amendment to the Constitution of the United States.

2. that books, records and domicile of the Plaintiffs or under the Plaintiffs['] control be secure from search and seizure except upon a warrant and probable cause, protected by article in amendment 4 to the Constitution of the United States.

3. to not be deprived of life liberty and property without due process of law protected by article in amendment 5 to the Constitution of the United States of America.

4. that no law shall be made or enforced that would impair the obligation of contracts protected by article 1 section 10 of the United States Constitution.

Pltfs' Amended Complaint at 13.

Second Cause of Action:

The United States in the person of the Defendant Actors, collectively, conspired and acted and continue to act in concert to knowingly and willfully, commit overt acts against the Plaintiffs individually and collectively in violation of 18 U.S.C. § 241 and 242, 42 U.S.C. § 1985, by instituting a grand jury investigation against the Plaintiffs without first compiling [sic] with federal regulations requiring a completed form 9131 and knowing that the grand jury members where [sic] all disqualified because the Plaintiffs['] right to participate in the qualification process mandated specifically by 28 U.S.C. § 1867, had been violated.

The acts and omissions of the Defendants actors result in the direct and proximate unlawful restraint under color of federal law and office, of the Plaintiffs' guaranteed and protected rights including but not limited to

1. the due process right to participate in the grand jury qualification process mandated by 28 U.S.C. § 1867 protected by article in amendment 5 to the constitution of the United States.

Pltfs' Amended Complaint at 13.

Third Cause of Action:

Defendant United States in the person of Defendant Actors Holm, Arnold and Martinez, with the assistance of Defendant Cowley and Hardaway and other persons unknown to the Plaintiffs, collectively, conspired and acted and continue to act in concert, to knowingly and willfully, commit overt acts against the Plaintiffs individually and collectively in violation of ... 18 U.S.C. § 241 and 242, 42 U.S.C. § 1985 and Article 1 section 8 clause 17[,] Article 4 clause 3 of the Constitution for [sic] the United States and 4 U.S.C. § 72 and the provisions of Article 1 section 2 of [t]he Constitution for the state of Washington under color of law and office to deprive the Plaintiffs of property without due process of law, under color [of] federal search warrants.

The acts and omissions of the Defendants Holm, Arnold, Martinez, Cowley and Hardaway result in the direct and proximate unlawful restraint under color of federal law and office, of the Plaintiffs' guaranteed and protected rights including but not limited to:

1. the due process right to not to be [sic] deprived of any property exempt by due process of law protected by article in amendment 5 to the constitution of the United States.

Pltfs' Amended Complaint at 13–14.

Fourth Cause of Action:

The Defendant United States in the Person of the Defendant actors, collectively, conspired and acted in concert to knowingly and willfully commit and continue to commit overt acts against the Plaintiffs individually and collectively, in violation of the limits and prohibitions imposed by Article 1 section 8 clause 17 and 4 U.S.C. § 72, and Article 4 clause 3 prohibiting the erection of a state within a state, limiting the legislative authority of the United States to only those specific areas owned and subject to the jurisdiction of the United States.

Defendant Actors McKay, Wszalek, and Odulio with the assistance of Defendants Holm, Cowley and Hardaway in willful and knowingly violation of 28 U.S.C. § 530(B) in a malicious attempt to obtain bogus indictments against the Plaintiffs for the purpose of malicious prosecution in violation of the laws of the state of Washington.

The acts and omissions of the Defendants McKay, Wszalek, and Odulio with the assistance of Defendants Holm, Cowley and Hardaway result in the direct and proximate unlawful restraint under color of federal law and office, of the Plaintiffs' guaranteed and protected rights including but not limited to:

1. the due process right to not to be [sic] deprived of any property exempt by due process of law protected by article in amendment 5 to the constitution of the United States.

Pltfs' Amended Complaint at 14.

2. Requested Relief

Based upon the foregoing allegations, plaintiffs, apparently, are seeking the following relief:

(1) *Writ* of Prohibition in the nature of a *Habeas Corpus Cum Causa;*

(2) Declaratory Judgment "declaring the rights, legal relationships, capacity and authority of the Parties" as raised by plaintiffs in twenty-eight (28) questions posed to the court;

(3) Preliminary injunction "to enjoin the acts of the Defendant Actors complained of herein ....";

(4) Permanent injunction "to enjoin the acts of the Defendant Actors complained of herein ....";

(5) An "order directing the Defendants to return all property and moneys taken from the Plaintiffs under color of warrant currently in the custody or control of the Defendants"; and

(6) Damages for costs of prosecuting the Plaintiffs' claims "in the amount of not less tha[n] $50,000[,] any amount in addition to be determined by the court that the Plaintiffs are entitled to."

## C. Defendant's Motion to Dismiss

### 1. Claims Against Persons Other Than the United States

In addition to the United States, plaintiffs have named a long list of *individual* defendants as officers and agents of the United States government, in their professional, personal, and private capacities.[2] Defendant moves to dismiss all party defendants other than the United States, pursuant to RCFC 12(b)(2), for lack of jurisdiction.

### 2. Claims Against the United States

Respecting plaintiffs' claims against the United States government, defendant contends that the Court of Federal Claims lacks subject matter jurisdiction to (i) issue a *writ of habeas corpus;* (ii) grant declaratory judgment, preliminary and permanent injunctive relief on matters alleged by plaintiffs; and (iii) award costs and/or damages sounding in tort. Defendant, therefore, moves to dismiss under RCFC 12(b)(1) for lack of subject matter jurisdiction, and RCFC 12(b)(6) failure to state a claim upon which relief can be granted.

## D. Discussion

### 1. Determination of Cognizable Jurisdiction

Plaintiffs' contention that counsel for defendant, the United States, is not a properly qualified representative to bring subject motions to dismiss for want of jurisdiction against certain named individuals and for want of subject matter jurisdiction is totally void of merit. Even if jurisdiction were unchallenged by defendant, the court must, of course, determine *sua sponte* whether it has jurisdiction. *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001), *aff'd,* 281 F.3d 1376 (Fed.Cir.2002). A court's jurisdiction is a threshold determination implicit in any adjudication; absent jurisdictional authority, a court is without power to evaluate a given claim. Moreover, "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Therefore, this court's first step in evaluating plaintiffs' claims is determining whether or not we are legally empowered to take further action in this case other than to dismiss and/or transfer.

■ First, plaintiffs' assertion of claims against various individual officials in their personal and professional capacities cannot be entertained in this court. "[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court. . . . [O]r if its maintenance against private parties is prerequisite to prosecution of the suit against the United States the suit must be dismissed." *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767 (citations omitted). Stated differently for the benefit of *pro se* plaintiffs, the *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual. *Id.* Hence, we GRANT defendant's motion to dismiss for lack of personal jurisdiction over all of the individually-named defendants per RCFC 12(b)(2).

---

**2.** Mr. John Ashcroft, Attorney General of the United States; Mr. John McKay, United States Attorney for the Western District of Washington; Mr. Mark W. Everson, Commissioner of Internal Revenue; Mr. John Snow, Secretary of the Treasury; the Honorable John C. Coughenour, Chief Judge of the Western District of the State of Washington; the Honorable Ricardo S. Martinez and the Honorable J. Kelley Arnold, United States Magistrate Judges of the Western District of Washington; Mr. Larry J. Wszalek and Mr. Mark T. Odulio, Justice Department Criminal Section attorneys, Tax Division; and Mr. Jeff Holm, Ms. Cathy Cowley, and Mr. Michael D. Hardaway, IRS criminal tax special agents.

Second, regarding defendant United States, all of the constitutional provisions and statutes relied upon by plaintiffs in their complaint and first amended complaint *supra* are facially, and therefore legally,[3] beyond the narrow scope of review permitted by Congress for this court.[4] Unquestionably, "Congress has the [sole] constitutional authority to define the jurisdiction of the lower federal courts." *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (citing *Finley v. United States,* 490 U.S. 545, 548, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)). Congress has defined the jurisdiction of this court via the Tucker Act, discussed *supra.* The basis of the plaintiffs' claims against the United States, and the nature of the relief sought, clearly fall outside of this court's limited subject matter jurisdiction.[5] Consequently, for reasons to follow, we GRANT defendant's motion to dismiss the plaintiffs' claims against the defendant, the United States, for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

### 2. Writ of Prohibition in the Nature of a *Habeas Corpus Cum Causa*

■ The actual meaning of a writ of prohibition is—"A writ issued by a superior court, directed to the judge and parties of a suit in an inferior court, commanding them to cease from the prosecution of the same, upon a suggestion that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." Black's Law Dictionary 1090–91 (5th ed.1979).

Based upon the foregoing definition of a writ of prohibition, the inherent presumption by plaintiffs must be that the Court of Federal Claims is a superior court to the district court against which the writ is sought. This clearly is not so. The district court was created under Article III (Judiciary branch) of the Constitution and has broad federal jurisdiction. Conversely, the Court of Federal Claims, an Article I (Legislative branch) court, created by statute, has a *narrowly-tailored* jurisdiction. While these courts share overlapping jurisdiction in some circumstances,[6] neither court has binding precedential authority on the other. Hence this court is not a superior court to the district court, and therefore lacks the authority to impose a writ of prohibition upon the district court.

■ Similarly, a *habeas corpus cum causa*[7] is defined as—"A writ issuing in civil cases to remove the cause, as also the body of the defendant, from an inferior court to a superior court having jurisdiction, there to be disposed of." Black's Law Dictionary 638, 639 (5th ed.1979). The applicable statute authorizing federal courts to grant *writs of habeas corpus,* provides the following in pertinent part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

(b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of

---

3. Detailed discussion of the subject matter limits of this court, as set forth in the Tucker Act, follow in section II.D.3. of this Order.

4. *See Sherwood,* 312 U.S. at 587–88, 61 S.Ct. 767 ("Except as Congress has consented there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States.").

5. Generally speaking, uncontested allegations of subject matter jurisdiction are taken as true. *Martinez,* 48 Fed.Cl. at 856. Once subject matter jurisdiction is challenged, however, the proponent cannot rely on its pleadings but instead must adduce supporting facts or other evidence. *Id.* The burden thus is squarely on the proponent to establish subject matter jurisdiction by a preponderance of the evidence. *Id.* In the case at bar, however, the issue can be decided entirely on the pleadings because plaintiffs have failed to make even a *prima facie* showing of subject matter jurisdiction.

6. *See e.g.* 28 U.S.C. § 1346 (involving tax claims not exceeding $10,000); 28 U.S.C. § 1491(b)(1) (pertaining to bid protest cases).

7. Referenced as meaning the same as *habeas corpus ad faciendum et recipiendum.*

habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

(c) The writ of habeas corpus shall not extend to a prisoner unless–

(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof . . . .

28 U.S.C. § 2241.

Clearly a hierarchical relationship does exist between the courts that *are* authorized to grant *writs of habeas corpus,* to wit, the district and circuit courts and the United States Supreme Court. It is important to note, however, that the Court of Federal Claims is not named among those courts having authority to grant *writs of habeas corpus.*[8] Here, Congress has plainly drawn the lines of jurisdiction and the matter is, therefore, foreclosed as to the first cause of action seeking a writ of *habeas corpus cum causa.*

> 3. Violations (Four (4) Causes of Action) Based Upon the Constitution and Acts of Congress

Plaintiffs have based their claims on the violations of due process and equal protection constitutional provisions, and various civil rights acts. While this court's Tucker Act jurisdiction grants us authority to hear claims against the United States, we are not empowered by Congress to recognize "*every* claim involving or invoking the Constitution, a federal statute, or a regulation." *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002 (1967) (emphasis added). Rather, the Court of Federal Claims may only hear claims seeking primarily *monetary relief* against the United States government based upon "money-mandating" provisions of the Constitution, acts of Congress, or executive regulations,[9] to which the plaintiff alleges a specific entitlement. *See Testan,* 424 U.S. at 397–98, 96 S.Ct. 948; *King,* 395 U.S. at 2–3, 89 S.Ct. 1501; *Sherwood,* 312 U.S. at 587–88, 61 S.Ct. 767.

Numerous courts in various cases have elaborated on the precise definition of a "money-mandating" provision such that claims based upon those provisions fall within the jurisdiction of this court. In substance, to meet our jurisdictional requirements, the alleged injury that forms the basis of the claim must flow from the United States' violation of a federal law that expressly or impliedly requires compensation. *See, e.g., Mitchell,* 463 U.S. at 206, 103 S.Ct. 2961 (claim for damages arising out of breach of fiduciary responsibilities in the management of Indian property); *United States v. Gerlach Live Stock Co.,* 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950) (claim of compensation for flood damage authorized by statute); *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (claim for inverse condemnation arising out of taking by eminent domain without due process).

In contrast, excluded from this definition are claims based on: violations of 5th amendment due process, *LeBlanc v. United States,* 50 F.3d 1025, 1026 (Fed.Cir.1995); violations of 4th amendment search and seizure, *LaChance v. United States,* 15 Cl.Ct. 127, 130 (1988); and violations of the equal protection clause of the 5th amendment, *Bounds v. United States,* 1 Cl.Ct. 215, 216 (1983), *aff'd,* 723 F.2d 68 (Fed.Cir.1983) ("Insofar as [plaintiffs] claim a denial of equal protection, our cases squarely hold that the equal protection clause of the fifth amendment does not form a basis for jurisdiction.") (citing *Muehlen v. United States,* 209 Ct.Cl. 690, 529 F.2d 533 (1976)). Consequently, it follows that the plaintiffs' claims based on these provisions, and other constitutional and

---

8. *See Ledford v. United States,* 297 F.3d 1378, 1381 (Fed.Cir.2002) ("[T]he habeas statute does not list the Court of Federal Claims among those courts empowered to grant a writ of habeas corpus, and the trial court therefore is without power to entertain Mr. Ledford's petition.").

9. For example, this court's jurisdiction generally applies to income and excise taxes, military and civilian pay, fifth amendment takings, Native American claims, bid protests and several other select matters. Note that this court's "takings" jurisdiction is not necessarily synonymous with the terms "seizure" or "confiscation." The use of those terms are often defined by the fact circumstances, as here.

statutory provisions that similarly lack a clear mandate for compensation by the federal government for violations,[10] do not fall within the scope of this court's limited subject matter jurisdiction.

 In addition to this court's want of jurisdiction to hear claims arising out of the plethora of laws cited by plaintiffs, the *type* of relief requested is also beyond our statutory jurisdiction. As noted, *supra*, this court's jurisdiction is generally limited to monetary remedies against the United States not sounding in tort; also, we cannot grant broad equitable remedies. 28 U.S.C. § 1491(a)(1). This court lacks authority to grant declaratory and/or injunctive relief absent "a specific and express statute of Congress." *King*, 395 U.S. at 4, 89 S.Ct. 1501. To date, the Court of Federal Claims may only grant declaratory and injunctive relief in bid protest cases in connection with government contracting pursuant to 28 U.S.C. § 1491(b)(2).[11]

The case at bar is procedurally similar to *Ledford v. United States*, 297 F.3d 1378 (Fed.Cir.2002). Mr. Ledford, a *pro se* litigant, as here, brought an action in the Court of Federal Claims for, among others, a writ of habeas corpus and declaratory and injunctive relief. The Court of Federal Claims, in an unpublished order issued by Judge Miller on August 23, 2001, dismissed Mr. Ledford's case, without prejudice, for lack of jurisdiction, and plaintiff appealed to the U.S. Court of Appeals for the Federal Circuit. *Per curiam*, the CAFC[12] affirmed, finding that the Court of Federal Claims (i) according to statute, to wit, 28 U.S.C. § 2241, lacks jurisdiction to grant habeas writs, (ii) in the absence of a statutory provision, lacks jurisdiction to enjoin the actions of the IRS, and (iii) pursu-

ant to 26 U.S.C. § 7433(a) lacked jurisdiction to award damages flowing from any alleged unlawful collection activities of the IRS.

 As in *Ledford*, plaintiffs herein ask this court to grant a *writ of habeas corpus*, to enjoin the acts of IRS special agents, and to award costs which amount to damages flowing from the alleged unlawful activities of the IRS. We must decline.

### 4. Court Assistance to *Pro Se* Litigants

Plaintiffs "remind" the court of our obligation to assist *pro se* litigants in modifying their pleadings to enable them to go forward. Plaintiffs cite to *Platsky v. CIA*, 953 F.2d 26 (1991), in support of the foregoing.[13] In *Platsky*, the Court of Appeals for the Second Circuit found that "the district court should not have dismissed Platsky's complaints without affording him leave to replead." *Id.* at 28. There, the *pro se* litigant unwittingly named federal agencies as defendants instead of federal officials as permitted under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and *Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). *Id.*

In the case at bar, the defect is not so much in the plaintiffs' pleadings as in their selection of forum. 28 U.S.C. § 2241, *supra*, clearly apprises plaintiffs of the forums authorized to grant *writs of habeas corpus*. Additionally, federal courts, other than this court and other specialized courts, are empowered to hear plaintiffs' claims for declaratory and injunctive relief based upon due process, equal protection, and civil rights violations, *e.g.*, district and circuit courts, and

10. Other provisions alleged by plaintiffs as the basis of their claims include various civil rights statutes, and the Washington State Constitution—which is not federal law and can never be used as a jurisdictional basis for this court's authority.

11. "To afford relief in such an action, the [Court of Federal Claims] may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2) (1994) & Supp. (2003).

12. The Court of Appeals for the Federal Circuit is an Article III court. *See Bowen v. Massachusetts*, 487 U.S. 879, 908, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

13. "*Pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements. Recognizing this, the Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel." *Platsky*, 953 F.2d at 28.

the Supreme Court of the United States. Consequently, irrespective of the amount of assistance in repleading this court might lend the litigants, nothing can possibly overcome our inherent absence of jurisdiction over claims of the nature purporting to be brought by plaintiffs.

"In order to justify the dismissal of a *pro se* complaint, it must be 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Platsky,* 953 F.2d at 28 (quoting *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Given the nature of the constitutional and statutory claims of the plaintiffs and the type of relief requested, and this court's jurisdictional void to entertain them, there can be no doubt that dismissal of plaintiffs' *pro se* complaint is wholly justified.

## III. CONCLUSION

Based upon all of the foregoing, this court finds that it lacks the requisite statutory jurisdiction to hear plaintiffs' claims. Therefore, plaintiffs' complaint and first amended complaint must be dismissed. However, inasmuch as the defects in the pleadings leave us without power to adjudicate the merits of the claims therein, this dismissal is, on this record, without prejudice. Therefore, "in the interest of justice" and to preserve the timely filing of plaintiffs' complaint in another federal court, we hereby transfer plaintiffs' claims to the U.S. District Court for the Western District of Washington at Seattle, pursuant to 28 U.S.C. § 1631 (1994),[14] where the merits of this case may be examined.

IT IS SO ORDERED.

---

**14.** "Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed or noticed, and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred." 28 U.S.C. § 1631.